

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0579-12

**SARA KATHERINE CLAY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### HILL COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. MEYERS, J., filed a dissenting opinion.

## O P I N I O N

Must a law-enforcement officer seeking to obtain a search warrant, under Article 18.01 of the Texas Code of Criminal Procedure,[1] swear out the affidavit in support of that warrant in the physical presence of the magistrate or may he do so telephonically, as

---

[1] TEX. CODE CRIM. PROC. art. 18.01.

happened in this case? We granted the appellant's petition for discretionary review to address that question. We hold that the warrant affidavit in this particular case was properly sworn out, and we affirm the judgment of the court of appeals.

## FACTS AND PROCEDURAL POSTURE

On June 29, 2008, the appellant was arrested and charged with misdemeanor driving while intoxicated.[2] She filed a pre-trial motion to suppress evidence obtained as a result of the execution of a search warrant to draw her blood for forensic testing. The parties proceeded on stipulated facts, without conducting an evidentiary hearing. The stipulated facts establish that the appellant was stopped by State Trooper J. Ortega for traveling 80 miles per hour in a 70 mile-per-hour zone. When probable cause to suspect the appellant of driving while intoxicated arose in the course of the stop, Ortega placed the appellant under arrest and requested that she provide a breath specimen for testing. The appellant refused, so Ortega filled out an affidavit for a search warrant to obtain a specimen of her blood. Ortega then called Hill County Court at Law Judge A. Lee Harris on the telephone. Ortega and Harris "each recognized the other's voice[,]" and in the course of the telephone conversation, Ortega "swore to and signed" the search warrant affidavit. It is specifically stipulated that Ortega did not sign the warrant affidavit "in the physical presence of Judge Harris" and that "Judge Harris did not physically witness" Ortega sign the warrant affidavit.

---

[2] TEX. PENAL CODE § 49.04.

Ortega faxed the warrant affidavit to Judge Harris, who signed and dated the jurat. Judge Harris then signed a search warrant authorizing the blood draw and faxed it back to Ortega, who had the appellant's blood drawn accordingly.[3]

The trial court denied the appellant's motion to suppress. The appellant pled guilty pursuant to a negotiated plea agreement, and her punishment was assessed at three days' incarceration in the county jail (with three days' credit for time already served) and a fine of $1,500. The trial court certified her right to appeal. On appeal, the appellant argued that the search warrant was invalid because the affidavit in support of the warrant was not sworn to in the physical presence of the magistrate, as she contends is required by Article 18.01 of the Code of Criminal Procedure. The Tenth Court of Appeals disagreed, holding that "a face-to-face meeting between the trooper and the judge was not required and the making of the oath over the telephone did not invalidate the search warrant."[4] At least one other court of appeals has reached the opposite result on comparable facts, albeit in an unpublished opinion.[5] We granted the appellant's petition for discretionary review to resolve this issue.[6]

---

[3] The record does not reveal the results of the forensic testing on the blood.

[4] *Clay v. State*, 382 S.W.3d 465, 470 (Tex. App.—Waco 2012).

[5] *Id*. at *1 (citing *Aylor v. State*, 2011 WL 1659887 (No. 12-09-00460-CR, Tex. App.—Tyler, delivered April 29, 2011) (not designated for publication)).

[6] TEX. R. APP. P. 66.3(a) & (b).

**THE ISSUE**

By statute, an evidentiary search warrant may issue in Texas for the extraction of blood for forensic testing.[7] The issuance of such a search warrant is governed by, *inter alia*, Article 18.01(b) of the Code of Criminal Procedure, which provides:

> (b) No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance. A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested. Except as provided by [another Article not pertinent here], the affidavit is public information if executed, and the magistrate's clerk shall make a copy of the affidavit available for public inspection in the clerk's office during normal business hours.[8]

Whether an investigating officer may apply for a search warrant by swearing out a supporting affidavit over the telephone is not specifically addressed in Article 18.01(b), or in any other provision of the Code of Criminal Procedure. We are therefore confronted with a case of first impression—just as we were half a dozen years ago in *Smith v. State*.[9]

---

[7] *See* TEX. CODE CRIM. PROC. art. 18.02(10) ("A search warrant may be issued to search for and seize . . . items . . . constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense[.]"); *Gentry v. State*, 640 S.W.2d 899, 902-03 (Tex. Crim. App. 1982) (construing Article 18.02(10)'s allusion to "items" to be sufficiently broad as to cover blood extraction). Since the date of the appellant's arrest, the Legislature has made it explicit that "[a]ny magistrate who is an attorney licensed by this state may issue a search warrant under Article 18.02(10) to collect a blood specimen from a person who . . . is arrested for an offense under Section 49.04 . . ., Penal Code; and . . . refuses to submit to a breath or blood alcohol test." Acts 2009, 81st Leg., ch. 1348, § 5, p. 4263, eff. Sept. 1, 2009.

[8] TEX. CODE CRIM. PROC. art. 18.01(b).

[9] 207 S.W.3d 787 (Tex. Crim. App. 2006).

In *Smith*, the officer seeking a search warrant swore out his probable cause affidavit in the physical presence of the magistrate, but, although he was under oath when he did so, he neglected to actually sign the affidavit.[10] The question before us was whether either the Fourth Amendment to the United States Constitution or Article 18.01(b) requires that an affidavit in support of a search warrant include the signature of the affiant. With respect to Article 18.01(b), we observed that the purpose of the signature on an affidavit is to memorialize the fact that the affiant took an oath.[11] While an oath is both constitutionally and statutorily indispensable, we held, a signature memorializing that the affiant swore out the affidavit is not, and the affidavit may still suffice to support the issuance of a search warrant if the record indicates that "the affidavit was solemnized by other means."[12] We expressly held "that the failure to sign the warrant affidavit does not invalidate the warrant if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate."[13] We went on to observe,

> Although the affiant's signature on an affidavit serves as an important memorialization of the officer's act of swearing before the magistrate, it is that act of swearing, not the signature itself, that is essential. It is important, too, that the law retain some flexibility in the face of technological advances. For

---

[10] *Id*. at 789.

[11] *Id*. at 791.

[12] *Id*.

[13] *Id*. at 792.

example, the federal courts and some state courts, now permit telephonic search warrants, and one can foresee the day in which search warrants might be obtained via e-mail or a recorded video conference with a magistrate located many miles away. In a state as large as Texas, such innovations should not be foreclosed by the requirement of a signed affidavit if the officer's oath can be memorialized by other, equally satisfactory, means. We leave those potential future changes to the Texas Legislature, but we should not stand in the way of the future by declaring that all affidavits, which are properly sworn to but unsigned, are necessarily invalid.[14]

Not surprisingly, both the appellant and the State find sufficient latitude in this passage from *Smith* to suggest support for their respective positions in this case.

For its part, the State relies upon *Smith*'s emphasis on the need to construe the statute with sufficient "flexibility" to account for "technological advances" and points to our express allusion to those jurisdictions that have legislated specific procedures governing telephonic application for search warrants. The appellant counters that such innovations are properly left to the legislative branch, not the judicial—that, while it would be a proper exercise of our judicial function for us to hold that telephonic search warrants do not offend the Fourth Amendment (or, for that matter, Article I, Section 9 of the Texas Constitution), we would have no occasion to do so unless and until the Texas Legislature should authorize them, as

---

[14] *Id*. at 792-93 (footnotes omitted). *See id*. at 792 n.24 ("Telephonic warrants are permitted under the Federal Rules of Criminal Procedure. FED.R.CRIM.P. 41(d)(3). * * * Several states also allow telephonic warrants, including Alaska, Arizona, California, Colorado, Delaware, Idaho, Illinois, Minnesota, Nebraska, and South Dakota."). We note that in 2011, since our opinion in *Smith*, the federal authority to issue telephonic warrants was re-codified in Rule 4.1, allowing a magistrate judge to "consider information communicated by telephone or other reliable electronic means when . . . deciding whether to issue a warrant[.]" FED. R. CRIM. P. 4.1(a).

have most of the other jurisdictions to which we alluded in *Smith*.[15]

We agree with the appellant that whether telephonic search warrants are permissible in Texas depends upon the parameters of the statute as it currently reads. Our job is to faithfully construe statutory language, never to enlarge upon it.[16] We cannot, simply for the sake of keeping pace with the technology, stretch the meaning of the statute beyond the bounds of what its language will tolerate. Article 18.01(b) requires a "sworn affidavit." In *Smith*, we held that a "sworn affidavit" need not contain the affiant's signature before it may support a search warrant, so long as there is other evidence to show "that the affiant *personally* swore to the truth of the facts in the affidavit *before* the issuing magistrate."[17] And indeed, this Court has held for the better part of a hundred years that, before a written statement in support of a search warrant will  constitute a "sworn affidavit," the necessary oath must be administered "before" a magistrate or other qualified officer.[18] In the name of

---

[15]

*See* note 14, *ante*.

[16]

*E.g.*, *Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991).

[17]

*Smith*, *supra*, at 792 (emphasis added).

[18]

As it originally appeared in the 1966 Code of Criminal Procedure, Article 18.01 did not refer to a sworn affidavit in support of a search warrant, but, like its predecessors in earlier codes, it spoke of the necessity of "a sworn complaint." Acts 1965, 59th Leg., ch. 722, § 1, p. 382, eff. Jan. 1, 1966. The first reference to the necessity of a "sworn affidavit" appears in Article 18.01(b) as a conforming amendment to the 1974 Penal Code. Acts 1973, 63rd Leg., ch. 399, § 2(E), p. 982, eff. Jan. 1, 1974. Nevertheless, even before the 1974 amendment, we frequently spoke in our case law of the requisites of an "affidavit" presented in support of a search warrant. *See*, *e.g.*, *Moore v. State*, 112 Tex. Crim. 142, 15 S.W.2d 617 (1929) (search warrant held invalid because, although Penal Code at the time

flexibility, can it reasonably be said that an oath administered over the telephone satisfies the requirement that, to be a "sworn affidavit" for purposes of Article 18.01(b), a writing must be sworn to "personally . . . before the issuing magistrate" or other qualified oath-giver? As presently written, does Article 18.01(b) allow for the granting of a search warrant based upon an affidavit that is sworn to over the telephone, inasmuch as the one thing we held in *Smith* to be "essential,"[19] namely, the oath, is not administered in the corporal presence of the magistrate or other official authorized to administer it?

---

required affidavits from two credible people to justify search of a private residence, one of the two affiants failed to actually "appear" before, and could not have signed his affidavit in the presence of, the issuing magistrate); *Alexander v. State*, 123 Tex. Crim. 65, 67, 57 S.W.2d 157, 158 (1932) (while treating a complaint in support of a search warrant as synonymous with an affidavit and holding that the "failure to date an affidavit was not fatal" to the warrant, we observed that neither our Penal Code nor Code of Criminal Procedure defined "affidavit," but that a civil statute "defines an affidavit as a statement in writing of a fact or facts, signed by the party making it, and sworn to before some officer authorized to administer oaths"); *Vaughn v. State*, 146 Tex. Crim. 586, 590-91, 177 S.W.2d 59, 61 (1944) (opinion on reh'g) (while holding that a search warrant was acceptable based on the affidavit of an affiant who did not formally take an oath but did sign the affidavit in the magistrate's presence, and "it was [his] understanding that [he] was taking an oath[,]" we observed that "[i]t is conclusive . . . that an affidavit must be made before an officer authorized to take the same before a search warrant may issue"); *Hernandez v. State*, 158 Tex. Crim. 296, 300, 255 S.W.2d 219, 222 (1953) (opinion on reh'g) (quoting *Alexander*'s definition of "affidavit" to hold that failure of jurat to name county is not fatal to the search warrant); *King v. State*, 167 Tex. Crim. 440, 442, 320 S.W.2d 677, 678 (1959) ("The affidavit not appearing regular on its face and in the absence of a showing that it was sworn to before a person authorized by law to administer it, the admission of the testimony showing the search under the search warrant based upon said affidavit and the results thereof was error."); *Greer v. State*, 437 S.W.2d 558, 562 (Tex. Crim. App. 1969) ("It is well established that an affidavit or complaint for a search warrant must be made before an officer authorized to take the same before a search warrant may issue."); *O'Quinn v. State*, 462 S.W.2d 583, 586-87 (Tex. Crim. App. 1970) ("It is the established rule in Texas that an affidavit or complaint for a search warrant must be made before an officer authorized to administer the same before a search warrant may issue.").

[19]

*Smith*, *supra*, at 792.

**ANALYSIS**

The statutory requirement of a "sworn affidavit" serves two important functions: to solemnize and to memorialize. That the affidavit must be sworn to fulfills the constitutional requirement that it be executed under oath or affirmation so as "to impress upon the swearing individual an appropriate sense of obligation to tell the truth."[20] That it must be in writing serves the additional objective that the sum total of the information actually provided to the issuing magistrate in support of his probable cause determination be memorialized in some enduring way to facilitate later judicial review.[21] Article 18.01(b)'s requirement that the

---

[20] Wayne R. LaFave, 2 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.3(e), at 521 (4th ed. 2004) (quoting *State v. Tye*, 636 N.W.2d 473, 478 (Wis. 2001)). As we also explained in *Smith*, "[t]he purpose of the oath is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility." 207 S.W.3d at 790.

[21] Although Article 18.01(b) does, the Fourth Amendment does not require that the basis for probable cause necessarily be in *writing*. *See id*. § 4.3(c), at 514 ("[I]t seems clear that a prior written record of the facts which show probable cause is not constitutionally required."). The requirement that the probable cause determination be memorialized in *some* enduring fashion, however, assures that the search will not be later justified by information that was never called to the attention of the constitutionally mandated neutral magistrate. "[A]n otherwise insufficient [warrant] affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. * * * A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless." *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 565 n.8 (1971). As Professor LaFave has observed,

> one important function of the warrant requirement is to facilitate review of probable cause and avoid justification for a search . . . by facts or evidence turned up in the course of [its] execution. That function is not being adequately served when search warrants may be upheld solely upon after-the-fact representations of the police as to what they told the magistrate.

LaFave, *supra*, § 4.3(b), at 511 (footnotes and internal quotation marks omitted).

memorialization take the form of a written affidavit was satisfied in this case by the fact that Ortega drafted a written affidavit and faxed it to Judge Harris, so that the issuing magistrate had a document to be "filed" as required.[22] On the particular facts of this case, then, the only remaining question is whether Ortega's written affidavit was properly "sworn" to, in contemplation of Article 18.01(b), when Judge Harris administered the oath to Ortega over the telephone rather than face to face.

There is apparently no Fourth Amendment impediment to administering the oath or affirmation telephonically. The Federal Rules of Criminal Procedure have authorized telephonic applications for a search warrant since 1977, and the federal courts long ago rejected the specific argument "that for constitutional purposes an oath or affirmation is invalid merely because it is taken over the telephone[,]" elaborating that "[t]he moral, religious and legal significance of the undertaking remains the same whether the oath taker and the witness communicate face-to-face or over the telephone."[23] Following the federal lead, many states now provide for telephonic search warrant applications by statute or rule,[24]

---

[22]

   *See* TEX. CODE CRIM. PROC. art. 18.01(b) ("A sworn affidavit . . . shall be filed in every instance in which a search warrant is requested.").

[23]

   *United States v. Turner*, 558 F.2d 46, 50 (2nd Cir. 1977).

[24]

   *See* ALASKA STAT. § 12.35.015(a) ("A judicial officer may issue a search warrant upon the sworn oral testimony of a person communicated by telephone or other appropriate means, or sworn affidavit transmitted by facsimile machine."); ARIZ. REV. STAT. § 13-3914 ("**C.** In lieu of, or in addition to, a written affidavit, or affidavits, as provided in subsection A, the magistrate may take an oral statement under oath which shall be recorded on tape, wire or other comparable method. This

and many of those provisions expressly permit the obligatory oath to be administered over

statement may be given in person to the magistrate or by telephone, radio or other means of electronic communication."); ARK. CODE ANN. § 16-82-201(a) (GENERAL RULE. If the circumstances make it reasonable to dispense with a written affidavit, any judicial officer of this state may issue a warrant based upon sworn oral testimony communicated by telephone or other appropriate means."); CAL. PENAL CODE § 817(c)(2)(A) ("In lieu of the [sworn statement made in writing] required in subdivision (b), the magistrate may take an oral statement under oath under . . . the following conditions: . . . The oath is made using telephone and facsimile transmission equipment . . . under all of the following conditions: The oath is made during a telephone conversation with the magistrate . . . ."); COLO. R. CRIM. P. 41(c)(3) ("A warrant, signed affidavit, and accompanying documents may be transmitted by electronic facsimile transmission (fax) or by electronic transfer with electronic signatures to the judge, who may act upon the transmitted documents as if they were originals."); 725 ILL. COMP. STAT. 5/108-4(b)(1) (General Rule. When the offense in connection with which a search warrant is sought constitutes terrorism or any related offense . . . and if the circumstances make it reasonable to dispense, in whole or in part, with a written affidavit, a judge may issue a warrant based upon sworn testimony communicated by telephone or other appropriate means, including facsimile transmission."); MICH. COMP. LAWS § 780.651(2)(a) & (b) ("An affidavit for a search warrant may be made by any electronic or electromagnetic means of communication, including by facsimile or over a computer network, if both of the following occur: (a) The judge or district court magistrate orally administers the oath or affirmation to an applicant for a search warrant who submits an affidavit under this subsection . . . ."); NEB. REV. STAT. § 29-814.03 ("A search warrant may be issued under section 29-814.05 pursuant to a telephone statement made to a magistrate or judge in accordance with the procedures set forth in this section."); N.J. CT. R. 3:5-3(b) ("A Superior Court judge may issue a search warrant upon sworn oral testimony of an applicant who is not physically present. Such sworn oral testimony may be communicated to the judge by telephone, radio or other means of electronic communication."); N.M. R. CRIM. P. DIST. CT. § 5-211 ("**F. Methods for requesting warrant.** A request for a search warrant may be made using any of the following methods: . . . (3) by transmission of the affidavit and proposed search warrant required under Subparagraph (1) of this paragraph to the judge by telephone, facsimile, electronic mail, or other reliable electronic means."); N.Y. CRIM. PROC. § 690.36 ("An oral application for a search warrant may be communicated to a judge by telephone, radio or other means of electronic communication."); OR. REV. STAT. § 133.545(6)(a) ("[T]he proposed warrant and the affidavit may be sent to the court by facsimile transmission or any similar electronic transmission that delivers a complete printable image of the signed affidavit and proposed warrant."); PA. R. CRIM. P. 203(A) ("In the discretion of the issuing authority, advanced communication technology may be used to submit a search warrant application and affidavit(s) and to issue a search warrant."); S.D. CODIFIED LAWS § 23A-35-5 ("The sworn oral testimony may be communicated to the magistrate by telephone or other appropriate means and shall be recorded and transcribed."); WASH. CRIM. R. 2.3(c) ("There must be an affidavit . . . or sworn testimony establishing the grounds for issuing the warrant. The sworn statement may be an electronically recorded telephonic statement."); WISC. STAT. § 968.12 (3)(a) ("A search warrant may be based upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication, under the procedure prescribed in this subsection.").

the telephone.[25] At least one state's highest appellate court has refused to suppress evidence based upon a warrant application that was made, and the oath administered, orally over the telephone—even in the face of a statute that requires a written affidavit.[26] Another state's highest court has held, in light of express statutory language requiring an affidavit to be

---

[25] *See* ALASKA STAT. § 12.35.015(b) ("A judicial officer shall place under oath each person whose oral testimony forms a basis of the application and each person applying for the search warrant. The judicial officer shall record the proceeding by using a voice recording device."); ARK. CODE ANN. § 16-82-201(d)(1) ("When a caller informs the judicial officer that the purpose of the call is to request a warrant, the judicial officer shall immediately place under oath each person whose testimony forms a basis for the application and each person applying for that warrant."); CAL. PENAL CODE § 817(c)(2)(A) ("The oath is made during a telephone conversation with the magistrate . . . ."); COLO. R. CRIM. P. 41(c)(3) ("A warrant affidavit may be sworn to or affirmed by administration of the oath over the telephone by the judge."); 725 ILCS 5/108-4(b)(4) ("When a caller informs the judge that the purpose of the call is to request a warrant, the judge shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant."); MICH. COMP. LAWS 780.651(5) ("If an oath or affirmation is orally administered by electronic or electromagnetic means of communication under this section, the oath or affirmation is considered to be administered before the judge or district court magistrate."); NEB. REV. STAT. § 29-814.03 ("The magistrate or judge shall call the officer at the number provided and shall place the officer under oath and take his or her statement. * * * For purposes of sections 29–814.01 to 29-814.06, a telephonic statement authorized by this section shall be considered to be an affidavit."); N.M. R. CRIM. P. DIST. CT. § 5-211 ("**G. Testimony, oaths, remote transmissions and signatures.** (1) Before ruling on a request for a warrant the judge may require the affiant to appear . . . telephonically . . . and may examine under oath the affiant and any witness the affiant may produce[.]"); N.Y. CRIM. PROC. § 690.36 ("Upon being advised that an oral application for a search warrant is being made, a judge shall place under oath the applicant and any other person providing information in support of the application."); OR. REV. STAT. § 133.545(6)(a) ("[T]he affiant may swear to the affidavit by telephone."); PA. R. CRIM. P. 203(C) ("issuing authority" may "orally administer an oath to an affiant" via "simultaneous audio-visual communication"); WISC. STAT. § 968.12(3)(d) ("When a caller informs the judge that the purpose of the call is to request a warrant, the judge shall place under oath each person whose testimony forms a basis of the application and each person applying for the warrant.").

[26] *State v. Lindsey*, 473 N.W.2d 857 (Minn. 1991); *See* MINN. STAT. 626.09 (providing that the magistrate "shall take the affidavits in writing, and cause them to be subscribed to by the party or parties making them").

"sworn to before" the issuing magistrate, that the telephonic application for a search warrant was invalid, but the court nevertheless refused to suppress the fruit of the search because the police officers acted in good faith.[27]  Yet another highest state court has recently held, however, in construing a statute that explicitly requires an "affidavit sworn to before the magistrate," that an oath administered over the telephone "complies with the literal terms of the statute such that there was no defect in the warrant."[28]  Our statute neither facially provides for, nor explicitly prohibits, administration of the oath telephonically.

We do not think that it impermissibly enlarges upon the statutory language to construe Article 18.01(b) to permit the administration of the oath over the telephone—at least under the circumstances of the present case.  Article 18.01(b) simply requires a "sworn affidavit." While our case law has historically defined an affidavit to be a writing sworn to "before" the oath-administering authority,[29] most of those cases pre-date the advent of our most modern electronic means of communication, and none expressly addresses the question whether an oath administered over the telephone qualifies as an oath "before" the magistrate.  As the

---

[27]

*White v. State*, 842 So.2d 565 (Miss. 2003);  *See* MISS. CODE. § 41-29-157(a)(2) ("A search warrant shall issue only upon an affidavit of a person having knowledge or information of the facts alleged, sworn to before the judge or justice court judge and establishing the grounds for issuing the warrant.").

[28]

*State v. Herring*, 692 S.E.2d 490, 496-97 (S.C. 2009).  *See* S.C. CODE § 17-13-140 ("A warrant issued hereunder shall be issued only upon an affidavit sworn to before the magistrate, municipal judicial officer, or judge of a court of record establishing the grounds for the warrant.").

[29]

*See* note 18, *ante.*

State points out,[30] the last edition of Black's Law Dictionary to have included a definition of the word "before" provides: "In the presence of; under the official purview of; as in a magistrate's jurat, '*before* me personally appeared,' etc."[31] This definition suggests that there may exist circumstances under which a search warrant affiant could validly present himself "before" an issuing magistrate—that is to say, "under the official purview of" that issuing magistrate—without the necessity of presenting himself corporally.

The numerous states that now provide for telephonic application for search warrants certainly assume as much. Several of the state regulatory schemes emphasize the importance of the magistrate's ability to verify the identity of the telephonic warrant applicant and/or his affiants for purposes of administering the oath.[32] The obvious intent behind such a requirement is to maximize the solemnizing efficacy of the telephonic oath to compensate for the absence of face-to-face administration. An officer who adequately identifies himself

---

[30] State's Brief at 8-9.

[31] BLACK'S LAW DICTIONARY 154 (6th ed. 1990). Subsequent editions have omitted any definition of the bare word "before."

[32] *See* N.J. CT. R. 3:5-3(b) ("Subsequent to taking the oath, the applicant must identify himself or herself, specify the purpose of the request and disclose the basis of his or her information."); N.M. R. CRIM. P. DIST. CT. § 5-211G.(2) ("If the judge administers an oath or affirmation remotely to the affiant or any witnesses the affiant may produce, the means used must be designed to ensure that the judge confirms the identity of the affiant and any witness the affiant may produce."); PA. R. CRIM. P. 203(C) ("Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must personally communicate with the issuing authority by any device which, at a minimum, allows for simultaneous audio-visual communication. During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant.").

to an issuing magistrate over the telephone and who then deliberately swears out a false affidavit would almost certainly subject himself to prosecution for perjury.[33] In any event, he would surely perceive the gravity of the enterprise and "an appropriate sense of obligation to tell the truth."[34]

> That is the posture of the present case. As the court of appeals observed,

> In this instance, the personal familiarity of the trooper and the judge with each other's voice provides very strong indicia of truthfulness, trustworthiness, and reliability so as to call upon Trooper Ortega's "sense of moral duty to tell the truth and instill in him a sense of seriousness and responsibility."[35]

We agree. We see no compelling reason to construe the "sworn affidavit" contemplated by Article 18.01(b) necessarily to require that the oath always be administered in the corporal presence of the magistrate, so long as sufficient care is taken in the individual case to preserve the same or an equivalent solemnizing function to that which corporal presence accomplishes. Only the Legislature is free to amend or supplement Article 18.01(b) to specifically and comprehensively regulate the process of obtaining search warrants by telephonic or other electronic means, as so many other states have now done.[36] Until that time, the question of whether the circumstances of an individual telephonic warrant

---

[33] TEX. PENAL CODE § 37.02.

[34] LaFave, *supra*, at 521.

[35] *Clay*, *supra*, at 470 (quoting *Smith*, *supra*, at 790).

[36] The 83rd Legislature convened on January 8, 2013.

application will suffice to satisfy the solemnizing function of the oath requirement under Article 18.01(b) will have to be resolved on a case-by-case basis.

## CONCLUSION

Because Ortega and Judge Harris recognized one another's voices on the telephone at the time Ortega swore out his warrant affidavit, it was properly solemnized. And because Ortega reduced the affidavit to writing and faxed it to Judge Harris for filing, the basis for probable cause was properly memorialized. Under these circumstances, we hold that Article 18.01(b)'s requirement of a "sworn affidavit" was satisfied. Accordingly, we affirm the judgment of the court of appeals.


DELIVERED:    January 9, 2013
PUBLISH