COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

PAMELA PATTERSON,                                        No. 08-12-00289-CR

§

         Appellant,                                        Appeal from

§

v.                                                       County Criminal Court No. 4

§

THE STATE OF TEXAS,                                      of Denton County, Texas

§

         Appellee.                                        (TC # CR-2010-04993-D)

§

## O P I N I O N

Pamela Patterson appeals her conviction of driving while intoxicated. A jury found Appellant guilty and the court assessed her punishment at confinement for 180 days, probated for sixteen months, and a $500 fine. The Texas Supreme Court transferred the appeal from the Second Court of Appeals to the Eighth Court of Appeals pursuant to a docket equalization order.[1] We affirm.

### FACTUAL SUMMARY

On June 7, 2010, a civilian, Don Hensley, called 911 to report that a black Range Rover was swerving in and out of her lane and had almost hit him. Hensley stayed on the phone with the 911 operator and followed the SUV until it came to a stop in someone's yard. The driver, later identified as Appellant, was slumped over the steering wheel. Police officers with the

---

[1] We will decide the case in accordance with the precedent of the Second Court of Appeals. *See* TEX.R.APP.P. 41.3.

Flower Mound Police Department arrived within three to four minutes. John Burns, the first officer who made contact with Appellant, observed that she had a strong odor of alcoholic beverage on her breath although she claimed to have only had one beer or one glass of wine. Appellant did not know what street she was on. Appellant told Burns she had been at a sushi restaurant and was on her way home to Argyle, Texas. Burns had Appellant exit the vehicle.

A rookie police officer, Benjamin White, and his field training officer, Ronnie Medeiros, arrived on the scene and White took over the DWI investigation. White first attempted to conduct HGN testing but he could not complete it because Appellant kept moving her head. White had Appellant perform two standardized field sobriety tests, the walk and turn and the one-legged stand. Appellant's poor performance on these tests indicated that she was intoxicated and White placed Appellant under arrest for DWI. White asked Appellant to provide a specimen of her breath or blood for blood alcohol concentration (BAC) testing, but she refused. White prepared a search warrant affidavit, signed it before a notary, and faxed it to a magistrate. The magistrate issued a warrant for a specimen of Appellant's blood and faxed it back to White. White took Appellant to a clinic and a nurse drew blood from Appellant. Testing showed Appellant's BAC was .17 grams of alcohol per 100 ml of blood. Appellant filed a motion to suppress the blood and blood test results because the search warrant was not supported by probable cause. At trial, she additionally objected on the ground that the warrant named Officer Medeiros as the affiant but it was signed by Officer White. The trial court denied the motion to suppress and admitted the evidence over Appellant's objections.

## MOTION TO SUPPRESS

In her sole issue, Appellant contends that the trial court erred by denying her motion to suppress because the named affiant, Officer Medeiros, did not sign the affidavit. Alternatively, she argues that if the affiant is deemed to be Officer White, then the magistrate issued a warrant based on the affidavit of an unidentified affiant.

*Factual Background*

The search warrant affidavit begins as follows:

> The undersigned Affiant, being a peace officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:
>
> My name is Ronnie Medeiros. I am a peace officer employed by the following law enforcement agency: Flower Mound Police Department.

The affidavit identifies Appellant as the suspect and alleges she committed the offense of driving while intoxicated. In the section of the affidavit titled "Probable Cause," the affiant states, in pertinent part, that:

> On 06/07/2010 at approximately 2155 a concerned citizen, Hensley, Don (xx/xx/xxxx)[2] called in a possible drunk driver. Hensley observed a black Range Rover swerve into the left hand lane that forced him to swerve and brake. As the vehicle headed westbound on FM 1171 (which at this point becomes a two lane undivided highway) Hensley observed the vehicle swerve off the road twice and also into the oncoming traffic lane. A written statement was obtained from Hensley who followed the suspects [sic] vehicle to the location where she turned off the vehicle and sat until officers arrived.
>
> Officers Medeiros 215 and I, Officer White 286, were dispatched to the scene at [sic] we arrived at approximately 2205.

At the conclusion of the affidavit, the affiant requests the issuance of a search warrant to

---

[2] The affidavit includes Henley's date of birth but we have intentionally redacted it from the opinion. Likewise, we have redacted Appellant's date of birth.

authorize him or an agent to search the person of the suspect for the blood evidence described in the search warrant and seize the same. Officer White signed the affidavit as the affiant and his signature is notarized by a notary public.

White testified that he used the Law Enforcement Advanced DUI/DWI Reporting System ("LEADRS") system to prepare the search warrant affidavit. White did not yet have a LEADRS account so he used Officer Medeiros's account. Because White used Medeiros's account, the LEADRS software automatically inserted Medeiros's name at the beginning of the search warrant, but the probable cause paragraph reflects that White is the affiant. The magistrate concluded that probable cause existed and issued a search warrant for Appellant's blood.

*Standard of Review*

We review a trial court's ruling on a motion to suppressing by using a bifurcated standard of review. *See e.g.*, *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997).[3] An appellate court must give almost total deference to the trial court's assessments of historical fact and conclusions of law with respect to mixed questions of law and fact that turn on credibility and demeanor. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex.Crim.App. 2013); *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex.Crim.App. 2012). In contrast, an appellate court engages in a *de novo* review of mixed questions of law and fact that do not turn on credibility and demeanor. *Saenz*, 411 S.W.3d at 494; *Ortiz*, 382 S.W.3d

---

[3] We are aware the bifurcated standard of review does not apply when determining whether there is probable cause to support the issuance of a search warrant because there are no credibility determinations and the court is constrained to the four corners of the affidavit. *See State v. McLain*, 337 S.W.3d 268, 271 (Tex.Crim.App. 2011). In such a case, we would apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex.Crim.App. 2004). This deferential standard of review does not apply in a case where the question is whether the affiant swore to the truthfulness of the statements in the affidavit. *See Smith v. State*, 207 S.W.3d 787, 790 (Tex.Crim.App. 2006).

at 372.

The Fourth Amendment to the United States Constitution guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The involuntary taking of a blood sample by law enforcement officers is a search and seizure within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *Smith v. State*, 557 S.W.2d 299, 301 (Tex.Crim.App. 1977). Law enforcement personnel may obtain a defendant's blood for a DWI investigation by search warrant. *Beeman v. State*, 86 S.W.3d 613, 616 (Tex.Crim.App. 2002); *see* TEX.CODE CRIM.PROC.ANN. art. 18.01(j)(West Supp. 2014). A search warrant may not issue "unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance." TEX.CODE CRIM.PROC.ANN. art. 18.01(b). Further, Article 18.01(b) provides that: "A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested." *Id.* It has long been the law in Texas that before a written statement in support of a search warrant will constitute a "sworn affidavit," the necessary oath must be administered before a magistrate or other qualified officer. *Clay v. State*, 391 S.W.3d 94, 99 (Tex.Crim.App. 2013).

Our decision in this case is also informed by *Smith v. State*, 207 S.W.3d 787 (Tex.Crim.App. 2006) which addresses the validity of a search warrant affidavit which had not been signed by the affiant. The evidence showed that the officer had appeared before the

magistrate and had sworn to the truth of the affidavit, but he mistakenly forgot to sign the affidavit. *Id.* at 788. The Court held that Article 18.01(b) statute requires an *oath*, but it does not specifically require a *signature*. *Id.* at 792. The Court explained that the purpose of this oath is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility. *Id.* The purpose of the written affidavit is to memorialize the affiant's recitation of the facts, conclusions, and legal basis for the issuance of the search warrant. *Id.* The affiant's signature is to memorialize the fact that he took the oath but it is not an oath itself. *Id.* The Court held that the affiant's failure to sign the warrant affidavit did not invalidate the warrant because other evidence proved that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate. *Id.* at 792-93.

*Analysis*

Citing *Smith v. State*, Appellant first argues that the search warrant affidavit is defective because Officer Medeiros is the named affiant and he did not sign or swear to the affidavit. The affiant, however, is the person who swears to the truth of the statements in the affidavit. It is undisputed that Officer White swore to the statements in the affidavit as evidenced by his notarized signature. Thus, Appellant's first argument is without merit. Appellant also argues that if Officer White is the affiant, then the magistrate issued a warrant based on the affidavit of an unidentified affiant. When the affidavit is examined as a whole, it is apparent that Officer Medeiros is mistakenly identified as the affiant in the first sentence of the affidavit, but the probable cause paragraph and signature line reflects that Officer White is the affiant. The affidavit complies with Article 18.01(b) because Officer White took the oath required by Article

18.01(b) and placed his signature and badge number on the affidavit as the affiant thereby memorializing the fact that he had taken the required oath. This satisfies Article 18.01(b)'s requirement of a "sworn affidavit." Accordingly, we conclude that the erroneous statement at the beginning of the affidavit identifying the affiant as Officer Medeiros does not invalidate the affidavit or the search warrant. The sole issue presented on appeal is overruled and the judgment of the trial court is affirmed.

October 31, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)